UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.S.,<br><br>                            Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>                          Respondents. | Case No.: 3:25-cv-02876-RBM-VET<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[Doc. 1]** |

      Pending before the Court is Petitioner A.S.'s ("Petitioner") Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241 challenging the lawfulness of his detention by the United States Department of Homeland Security ("DHS"). (Doc. 1.) For the reasons set forth below, the Court **GRANTS** the Petition.

### I.    BACKGROUND

**A.    Factual Background**

      Petitioner is a 23-year-old Russian citizen. (*Id.* at 9.)[1] He fled Russia because he

---

[1] The Court cites the CM/ECF electronic pagination for filings unless otherwise noted.

feared abuse, arrest, and intimidation by the Russian government on account of his political opinions, nationality, and religion. (*Id.*) He entered the United States without inspection on April 17, 2022, intending to apply for asylum, withholding of removal, and protection under the Convention Against Torture. (*Id.*) On April 19, 2022, DHS issued him: (1) a Form I-94 admitting him into the United States; (2) a Notice to Appear charging him with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I) as a noncitizen present who lacked valid travel documents; and (3) a Warrant for Arrest pursuant to Section 236 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1226. (*Id.* at 12–13 (citing Doc. 1-2 at 4, 7, 15).) On either April 19 or 20, 2022, DHS served Petitioner with a Notice of Custody Determination indicating that Petitioner would be detained pending a final administrative determination in his case. (Doc. 1-2 at 6.) On June 6, 2022, DHS released Petitioner on parole "[i]n accordance with section 212 of the [INA]." (Doc. 1-2 at 17.)

On December 9, 2022, counsel for DHS agreed to a motion for dismissal of Petitioner's INA § 240 proceedings in immigration court. (Doc. 1-2 at 19.) On December 12, 2022, the immigration court in San Diego granted that motion because "continuation of the proceedings [was] no longer in the best interest of the government." (Doc. 1-2 at 22 (citing 8 C.F.R. § 1239.2(c)).) On April 7, 2023, Petitioner received an Acknowledgement of Receipt from United States Citizenship and Immigration Services ("USCIS") that his Form I-589 Application for Asylum and for Withholding of Removal had been received and was pending. (Doc. 1-2 at 25.) The Acknowledgement of Receipt stated: "You may remain in the U.S. until your asylum application is decided." (*Id.*). More than two years later, on October 2, 2025, Respondents detained Petitioner while he was working with lawful work authorization. (Doc. 1 at 14.) DHS then re-commenced removal proceedings against him under INA § 240, codified at 8 U.S.C. § 1229a. (Doc. 6-1 at 3.) Petitioner represents that he "intends to get married with his U.S. citizen [fiancée] while in custody." (Doc. 1 at 6.)

/ / /

/ / /

B.  **Procedural Background**

Petitioner filed his Petition on October 24, 2025.  (Doc. 1.)  On October 27, 2025, the Court set a briefing schedule.  (Doc. 2.)  On November 7, 2025, the Court granted Petitioner's Motion to Proceed Pseudonymously.  (Doc. 7.)  That same day, Respondents filed their Return to Habeas Petition ("Response").  (Doc. 6.)

## II.  LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."  28 U.S.C. § 2241(a).  The petitioner bears the burden of demonstrating that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."  *Id.* § 2241(c)(3).

## III.  DISCUSSION

Petitioner argues that the Petition should be granted because DHS detained him without a bond hearing in violation of the Fifth Amendment's Due Process Clause and the Administrative Procedure Act ("APA").  (Doc. 1 at 19–31.)   Respondents argue that Petitioner: (1) improperly brings habeas claims regarding expedited removal, as he is not in expedited removal proceedings; (2) is jurisdictionally barred from bringing his claims under 8 U.S.C. § 1252(g) and § 1252(b)(9); (3) failed to exhaust administrative remedies; and (4) is legally detained under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2). (Doc. 6 at 7–16.)

The Court finds that it has jurisdiction over Petitioner's claims because the Petition challenges the legality of Petitioner's ongoing detention without a bond hearing rather than the decision to commence removal proceedings or any act to adjudicate or execute a removal order.  The Court also finds that Petitioner is subject to the discretionary detention

procedures under 8 U.S.C. § 1226 and that his detention without a bond hearing violates the Due Process Clause.[2]

### A. Jurisdiction

As the Court has an obligation "to determine that [it has] jurisdiction before proceeding to the merits" of any case, it will first address Respondents' jurisdictional arguments. *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). For the reasons set forth below, the Court finds that it has jurisdiction over Petitioner's claims.

Respondents argue first that the Court lacks jurisdiction to hear this Petition under 8 U.S.C. § 1252(g). (Doc. 6 at 8–9.) This statutory bar against judicial review precludes the Court from exercising jurisdiction over the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C § 1252(g). The Supreme Court has narrowly interpreted § 1252(g) as applying "only to [those] three discrete actions that the Attorney General may take." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis omitted) (quoting 8 U.S.C. § 1252(g)).

Petitioner does not challenge the decision to commence removal proceedings or any act to execute a removal order. Rather, he challenges Respondents' "detention of Petitioner without a meaningful bond and custody redetermination hearing to determine whether he is a flight risk or danger to others." (Doc. 1 at 25.) He is thus enforcing his "constitutional rights to due process in the context of the removal proceedings—*not* the legitimacy of the removal proceedings or any removal order." *Garcia v. Noem*, Case No.: 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *4 (S.D. Cal. Sept. 3, 2025) (emphasis in original); *see also Chavez v. Noem*, --- F. Supp. 3d ---, 2025 WL 2730228, at *3 (S.D. Cal. 2025) (finding the same); *United States v. Hovespian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (noting a

---

[2] Because, as Respondents correctly note, Petitioner is not in expedited removal proceedings, the Court does not reach any arguments related to them. (*See* Doc. 7 at 7–8.)

"district court may consider a purely legal question that does not challenge the Attorney General's discretionary authority, even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority"). Therefore, § 1252(g) does not strip the Court of jurisdiction.

Respondents argue second that Petitioner's claims "necessarily arise" from the Attorney General's decision to commence removal proceedings against him. (Doc. 6 at 9.) This interpretation of 8 U.S.C. § 1252(g) would "eliminate judicial review of immigration [detainees'] claims of unlawful detention . . . inconsistent with *Jennings v. Rodriguez* and the history of judicial review of the detention of noncitizens under 28 U.S.C. § 2241." *Sanchez v. LaRose*, Case No.: 25-cv-2396-JES-MMP, 2025 WL 2770629, at *2 (S.D. Cal. Sept. 26, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018)); *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022)). Accordingly, as other courts in this District have found in similar cases, the Court has jurisdiction to hear Petitioner's claims that his detention is unlawful under 28 U.S.C. § 2241. *See Sanchez*, 2025 WL 2770629, at *2; *Rokhfirooz v. LaRose*, Case No.: 25-cv-2053-RSH-VET, 2025 WL 2646165 (S.D. Cal. Sept. 15, 2025).

Respondents argue third that 8 U.S.C. § 1252(b)(9) bars judicial review of Petitioner's claims because Petitioner is challenging the basis upon which he is detained, and the exclusive means of judicial review of such claims is a petition for review to a court of appeals. (Doc. 6 at 9–11 (citing *Reno*, 525 U.S. at 483).) Section 1252(b)(9) provides that judicial review of "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."

Section 1252(b)(9) was "intended to 'channel judicial review over final orders of removal to the courts of appeals,' not 'foreclose all judicial review of agency actions' touching on deportation proceedings writ large." *Salvador v. Bondi*, Case No. 2:25-cv-07946-MRA-MAA, 2025 WL 2995055, at *4 (C.D. Cal. Sept. 2, 2025) (quoting *J.E.F.M.*

*v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)). The Supreme Court has "explained that practically any question of fact or law related to immigration detention technically 'aris[es] from' actions taken to remove a noncitizen 'in the sense that the [noncitizen's] injuries would never have occurred if they had not been placed in detention.'" *Salvador*, 2025 WL 2995055, at *4 (quoting *Jennings*, 583 U.S. at 293). But "cramming judicial review of those questions into the review of final removal orders would be absurd." *Id*. In rejecting such an expansive interpretation of § 1252(b)(9), the *Jennings* court reasoned:

> Interpreting 'arising from' in this extreme way would . . . make claims of [unlawful] detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Jennings*, 583 U.S. at 293.

This logic applies equally here. As discussed above, Petitioner challenges the legality of his continued detention rather than a final order of removal. Accordingly, § 1252(b)(9) does not strip this Court of jurisdiction. *See also Salvador*, 2025 WL 2995055, at *5 (rejecting similar argument under § 1252(b)(9); *Noori v. Larose*, Case No.: 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *7 (S.D. Cal. Oct. 1, 2025) (same).

**B.     Exhaustion**

Respondents also argue that the Court "should ensure Petitioner properly exhausts administrative remedies." (Doc. 6 at 11 n.3.) "Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). Although 28 U.S.C. § 2241 "does not specifically require petitions to exhaust direct appeals before filing petitions for habeas corpus," the Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001) (cleaned up). The Court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative

remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (cleaned up).

"The Court, following other courts in this District, finds that exhaustion would be futile because the [BIA] is obligated to apply the binding precedent of *Matter of Yahure Hurtado*, 29 I & N. Dec. 216 (BIA 2025) to find that detention is mandatory under 8 U.S.C. § 1225(b)(2)." *Esquivel-Ipina v. LaRose*, Case No.: 25-CV-2672 JLS (BLM), 2025 WL 2998361, at *3–4 (S.D. Cal. Oct. 24, 2025); *see also Garcia*, 2025 WL 2549431, at *4–5 (same); *Chavez*, 2025 WL 2730228, at *3–4 (same).

**C.     Mandatory or Discretionary Detention**

The statutory provision governing Petitioner's detention determines what procedures Respondents must follow and what level of process Petitioner is afforded. Under 8 U.S.C. § 1225(b)(2), noncitizens are subject to mandatory detention without eligibility for bond. "Under § 1226(a), noncitizens are entitled to a bond hearing before an immigration judge to determine whether they pose a flight risk or danger to the community." *Ledesma Gonzalez v. Bostock*, CASE NO. 2:25-cv-01404-JNW-GJL, 2025 WL 2481574, at *2 (W.D. Wash. Oct. 7, 2025); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 951 (9th Cir. 2008) (holding that "§ 1226(a) must be construed as *requiring* the Attorney General to provide the [noncitizen] with such a hearing"), *abrogation on other grounds recognized by Avilez v. Garland*, 69 F.4th 525, 535 (9th Cir. 2023). For the reasons set forth below, the Court finds that Petitioner is subject to the procedures set forth in § 1226(a).

**1.     Mandatory Detention Under § 1225**

Section 1225 applies to noncitizens who are "applicants for admission." An applicant for admission is a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted.'" *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(1)). All applicants for admission "shall be inspected by immigration officers" to assess whether they may be admitted. § 1225(a)(3). "[I]f the examining immigration

officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained." § 1225(b)(2)(A). Other than for a limited exception under 8 U.S.C. § 1182(d)(5)(A) for parole "for urgent humanitarian reasons or significant public benefit," which is not implicated here, detention under § 1225(b)(2) is mandatory. *See also Sequen v. Albarran*, --- F. Supp. 3d ---, 2025 WL 2935630, at *1 (N.D. Cal. 2025) (noting that "noncitizens subject to 1225(b)(2) . . . are subject to mandatory detention while their full removal proceedings are pending").

### 2. Discretionary Detention Under § 1226

Section 1226 applies to noncitizens who are "detained pending a decision on whether the [noncitizen] is to be removed from the United States." Section 1226 thus affords the government significant discretion; so long as the detained noncitizen is not covered by § 1226(c)—which requires mandatory detention for noncitizens who have been charged with certain crimes—the Attorney General may release the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). Such release is proper where the noncitizen "satisfies [the government] that [he] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." § 1226(a)(4). If a noncitizen wishes to contest the initial custody determination, the denial or amount of bond, he has a right to do so before an immigration judge. 8 C.F.R. § 1236.1(d)(1).

### 3. Petitioner is Subject to § 1226

The Court finds that § 1226 governs here because: "(1) DHS has consistently treated [Petitioner] as subject to detention on a *discretionary* basis under § 1226(a);" and "(2) a proper understanding of the relevant statutes, in light of their plain text, overall structure, and . . . case law interpreting them, compels the conclusion that § 1225's provisions for mandatory detention of noncitizens 'seeking admission' [do] not apply to someone like [Petitioner]," who has been residing in the United States for over three years. *See Lopez Benitez v. Francis*, --- F. Supp. 3d ---, 2025 WL 2371588, at *3 (S.D.N.Y. 2025) (emphasis in original).

///

First, "the detention authority consistently applied by the government to [Petitioner] since [his] arrival in the United States has always been § 1226." *Salcedo Aceros v. Kaiser*, Case No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025). The April 19 or 20, 2022 Notice of Custody Determination (Doc. 1-2 at 6) and the Warrant for Arrest (*id.* at 15) were issued pursuant to § 236 of the INA, which is codified at 8 U.S.C. § 1226. *See also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115–16 (9th Cir. 2007) (holding that a noncitizen released pursuant to INA § 236 "was conditionally paroled under the authority of § 1226(a)").

Second, the statutory text—and its interpretation by the great weight of district courts to have considered it[3]—establish that Petitioner was detained under § 1226. Section 1225(b)(2)(A) states: "in the case of [a noncitizen] who is an applicant for admission, if the examining immigration officer determines that [a noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] shall be detained for a proceeding under section 1229a of this title." Thus, for § 1225(b)(2)(A) to apply, a noncitizen must be: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted." *Martinez*, 792 F. Supp. 3d at 214.

The *Rodriguez* court extensively analyzed which statute governs noncitizens in circumstances like Petitioner's. 2025 WL 2782499, at *16–24. It held that noncitizens who entered the United States without inspection but have been "residing in the United

---

[3] *See Quispe v. Crawford*, Civil Action No. 1:25-cv-1471-AJT-LRV, 2025 WL 2783799, at *6 (E.D. Va. Sept. 29, 2025) ("Petitioner's detention is governed by § 1226(a)'s discretionary framework, not § 1225(b)'s mandatory detention procedures, as at least thirty federal district courts around the country . . . have concluded when faced with habeas petitions from comparably situated petitioners."); *Rodriguez v. Bostock*, --- F. Supp. 3d. ---, 2025 WL 2782499, at *1 n.3 (W.D. Wash. Sept. 30, 2025) ("conclud[ing] that the government's position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice" and collecting over 20 cases); *but see Chavez*, 2025 WL 2730228, at *5 ("Heeding the plain language of the statute also does not contradict or render superfluous § 1226" nor "the addition of § 1226(c) by the [Laken Riley] Act. . . .").

States" and were "not apprehended upon arrival" are governed by § 1226's discretionary detention procedures. *Id.* at 16–17, 19, 21. The court reasoned that § 1225(b)(2) requires that the noncitizen be "seeking admission," language that "necessarily implies some sort of present-tense action." *Id.* at 22 (citing *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011) (9th Cir. 2020) (finding that the phrase "*arriving* in the United States" and its "use of the present progressive, like use of the present participle . . . denotes an ongoing process") (emphasis in original)).

This Court finds the reasoning in *Rodriguez* persuasive and adopts it here. Petitioner had been residing in the United States for over three years at the time of his arrest and detention in October 2025. (Doc. 1 at 14.) He was not apprehended upon arrival or at the border; rather, he was arrested while working with a lawful work authorization. (Doc. 1 at 14.) Therefore, he was not "seeking admission" at that time, and his detention falls under § 1226's discretionary detention procedures. *Accord Martinez*, 2025 WL 2371588, at *8 (concluding that because the petitioner had already been residing in the United States for years when she was detained, "Section 1225(b)(2)(A) . . . simply had no application to her case"); *Oliveros v. Kaiser*, Case No. 25-cv-07117-BLF, 2025 WL 2677125, at *4 (N.D. Cal. Sept. 18, 2025) (concluding that § 1225(b)(2) "does not apply to noncitizens who have been released by DHS on their own recognizance into the interior of the United States").

**D.     Due Process**

Because Petitioner's detention is governed by § 1226, his detention without notice or a bond hearing violates the Due Process Clause. The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court applies the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976). The Court must consider: (1) "the private interest that will be affected

by the official action;" (2) the "risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335. All three factors support a finding that Respondents' revocation of Petitioner's parole without an opportunity to be heard deprived Petitioner of his due process rights.

First, Petitioner has a significant liberty interest in remaining out of custody pursuant to his parole. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions of release.'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)); *see also Morrissey*, 408 U.S. at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life."); *Sequen*, 2025 WL 2935630, at *6 (noting the petitioners had "substantial private interests in remaining out of custody" because they had "built a community in California for more than a year and a half, living with family or romantic partners" and were either seeking work authorization or already working "with the federal government's express authorization"); *Cardin Alvarez v. Rivas*, No. CV 25-02943 PHX GMS (CDB), 2025 WL 2898389, at *16 (D. Ariz. Oct. 7, 2025) (noting the petitioner was "told by the United States government . . . [y]ou may remain in the U.S. until your asylum application is decided" and concluding that his "engendered reliance interest, and his compliance with everything that the Executive Branch asked of him, entitle[d] him to more than summary arrest and detention").

///

"Second, the risk of an erroneous deprivation of such interest is high as Petitioner's parole was revoked without . . . giving [him] an opportunity to be heard." *Gonzalez Salazar v. Casey*, Case No.: 25-CV-2784 JLS (VET), 2025 WL 3063629, at *4 (S.D. Cal. Nov. 3, 2025); *see also Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (finding where, as here, Petitioner "has not received any bond or custody redetermination hearing," the "risk of an erroneous deprivation of liberty is high."). "Civil immigration detention is permissible only to prevent flight or protect against danger to the community." *Pinchi*, 792 F. Supp. 3d at 1035 (citing *Zadvydas*, 533 U.S. at 690). Here, there is no evidence that Petitioner's detention would serve either purpose. "Since DHS's initial determination that Petitioner should be paroled because [he] posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed." *Gonzales Salazar*, 2025 WL 3063629, at *3 (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."). To the contrary, since 2022, Petitioner has "attended every required ICE check in and [complied] with all requirements of the release on parole." (Doc. 1 at 3.)

Third, Respondents' interest in detaining Petitioner without a hearing is low. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [the petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low."); *Pinchi*, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures is not a legitimate government interest."). "Therefore, because Respondents detained Petitioner by revoking [his] parole in violation of the Due Process Clause, [his] detention is unlawful." *Gonzalez Salazar*, 2025 WL 3063629, at *5.

Based on this review of the *Mathews* factors, the Court concludes that due process requires Petitioner to be released from custody and receive a hearing before an immigration

judge before he can be re-detained.  Respondents argue that release is improper and "the proper remedy would be directing a bond hearing under § 1226(a)." (Doc. 6 at 15.)  But this argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is detained, he will already have suffered the injury he is now seeking to avoid." *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); *see also E.A. T.-B. v. Wamsley*, --- F. Supp. 3d ---, 2025 WL 2402130, at *6 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); *Domingo v. Kaiser*, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention.").

## IV.   CONCLUSION[4]

For the foregoing reasons, the Petition is **GRANTED**.  Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody, subject to the conditions of his preexisting parole.
2. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his parole and a hearing before an immigration judge to determine whether detention is warranted.  Respondents shall bear the burden of establishing, by clear and convincing evidence,[5] that Petitioner

---

[4]  In light of the disposition herein, the Court declines to address the Petition's remaining grounds for relief.

[5]  *See Sadeqi v. LaRose*, --- F. Supp. 3d ---, 2025 WL 3154520, at *4 (S.D. Cal. 2025) ("Petitioner is entitled to a prompt and individualized bond hearing, at which Respondents must justify her continued detention by a showing of clear and convincing evidence that Petitioner would likely flee or pose a danger to the community if released.") (citing *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), *abrogated on other grounds by Jennings*,

poses a danger to the community or a risk of flight.[6]

**IT IS SO ORDERED.**

DATE: November 19, 2025

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

---

583 U.S. 281 (explaining that "the substantial liberty interest at stake" warranted placing the burden on the government to "prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond").

[6] This relief has been granted in similar matters. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1089 (E.D. Cal. 2025); *Duong v. Kaiser*, --- F. Supp. 3d ---, 2025 WL 2689266, at *7–10 (N.D. Cal. 2025); *Pinchi*, 792 F. Supp. 3d at 1038; *Gonzalez Salazar*, 2025 WL 3063629, at *6; *Lepe v. Andrews*, --- F. Supp. 3d ---, 2025 WL 2716910, at *10 (E.D. Cal. 2025); *Ledesma Gonzalez*, 2025 WL 2841574, at *9.